UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KEVIN D. MOORE, <br><br> Plaintiff, <br><br> v. <br><br> ROBERT E. CARTER, et al., <br><br> Defendants. | CAUSE NO.: 3:18-CV-228-JD-MGG |

OPINION AND ORDER

Kevin D. Moore, a prisoner without a lawyer, filed a complaint alleging that officers at the Indiana State Prison failed to protect him from inmates associated with the Latin Kings gang and failed to provide medical care following attacks by gang members. A filing by an unrepresented party "is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Moore alleges that he arrived at the Indiana State Prison on October 5, 2017, and shortly thereafter, members of the Latin Kings began harassing and assaulting him. As a result of these attacks and a failure to provide medical care, he is suing six defendants: Commissioner Robert E. Carter, Superintendent/Warden Ron Neal, Unit Team

Executive Pam Banes, Unit Team Director Tommie Horne, Unit Team Officer Howard Wilson, and Executive Assistant Joshua Wallen. When an inmate is attacked by another inmate, the Eighth Amendment is violated only if "deliberate indifference by prison officials effectively condones the attack by allowing it to happen." *Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). General requests for help, expressions of fear, and even prior attacks are insufficient to alert guards to the need for action. *Klebanowski v. Sheahan*, 540 F.3d 633, 639–40 (7th Cir. 2008). By contrast, "a complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015). "Even if an official is found to have been aware that the plaintiff was at substantial risk of serious injury, he is free from liability if he responded to the situation in a reasonable manner." *Fisher v. Lovejoy*, 414 F.3d 659, 664 (7th Cir. 2005).

Moore's first incident with the Latin Kings occurred on October 18, 2017. Moore was pushed, hit, kicked, threatened at knife point, and told his commissary belonged to them by two members of the Latin Kings. (ECF 1 at 3.) Moore does not explain whether he is suing the defendants for this incident or, if so, which defendants he is suing. But regardless, since he does not allege that either he or the defendants had any advance knowledge that this attack would occur, the defendants cannot be liable for this

2

incident. *Farmer*, 511 U.S. at 837. Moore reported the October 18, 2017, incident to Pam Banes. (ECF 1 at 3.) Although it is not clear what Moore told Banes, he does not allege that he indicated to Banes that he believed another attack was imminent.

More than a month later, on November 27, 2017, members of the Latin Kings showed Moore a letter from his sister indicating that she was sending money. (ECF 1 at 3.) They told Moore that the money is theirs. When Moore protested, they took turns hitting him. There is nothing in the complaint that suggests Moore himself was expecting this attack. While Moore told Banes about the first incident, there is no information in the complaint that demonstrates she had knowledge of facts suggesting a second attack would occur, and Moore has not alleged facts from which it can be plausibly inferred that Banes was deliberately indifferent to Moore's safety.

Moore told the officers in charge about the November 27, 2017, incident, although he does not provide their names. He also saw Banes and tried to tell her about the incident, but Moore states that she did not have time to discuss it. (ECF 1 at 4.) Moore does not allege that he made further attempts to speak with Banes about this incident. A few days later, on December 2, 2017, a member of the Latin Kings confronted Moore in the shower area. Moore ran to his cell and locked himself inside. He was hit once. The Latin Kings member told Moore he was a dead man, they were going to kill him, and if he moved to another cell house they would still get him. Moore complained to Banes after the first incident, although it is not clear what he told her, and Moore attempted to notify Banes about the second incident, but his effort was unsuccessful. Thus, it cannot be plausibly inferred that Banes had sufficient knowledge

of facts suggesting that Moore was in imminent danger prior to the December 2, 2017, attack.

Moore told Pam Banes about the December 2, 2017, incident, and she said she would move him to E-dorm in lieu of protective custody. (ECF 1 at 4.) This appears to be a reasonable response to the threat Moore faced. *See Fisher*, 414 F.3d at 664. Moore made a second request for protection on December 3, 2017, but Pam Banes did not move Moore until December 6, 2017. While awaiting his relocation, his door remained locked, but members of the Latin Kings threw urine at him and threatened him. (ECF 1 at 4.) At this point, three attacks had occurred and Banes was aware that members of the Latin Kings posed a serious threat to Moore. Banes understood that the threat was serious enough that a transfer was necessary – indeed, they had threatened to kill him - yet she took no action to protect Moore other than locking his cell. These allegations are sufficient to state a claim that Banes was deliberately indifferent to Moore's safety when she failed to provide adequate protection between the December 2, 2017, attack and his transfer to E-dorm on December 6, 2018.

The day after Moore was moved to E-dorm, a member of the Latin Kings found him, hit him, choked him, and told him he better get Hauoc[1] his money. (ECF 1 at 4.) The Latin Kings member also said that Hauoc would be placed on lawn crew and would be coming to Moore's new dorm. Moore told Tommie Horn, and he said he

---

[1] This may not be the correct spelling of this inmate's name. Moore's writing is generally legible, but this particular name is difficult to decipher. It appears to be written in parentheses and not capitalized.

4

would not let Hauoc come to E-dorm, and that he would place a note in the inmate's packet to keep them apart. But, just one week later, Hauoc was moved to E-dorm with the approval of Banes and Horn. Members of the Latin Kings continued to assault him. At this point, Moore had been attacked on several occasions and both Banes and Horn were aware that members of the Latin Kings posed a serious threat to Moore's safety. Thus, it can be plausibly inferred that Banes and Horn were deliberately indifferent to Moore's safety when they allowed Hauoc to move to E-dorm after Moore had just been moved there because members of the Latin Kings, including Hauoc, posed a safety risk to Moore. Moore may proceed against Banes and Horn on his claim that they were deliberately indifferent to his safety by permitting Houoc to move to E-dorm in December of 2017, resulting in a further assault.

On January 10, 2018, Moore went to the bathroom and a member of the Latin Kings spat in his face. Moore went to Lt. Williams and filed a request for protection. He was moved as a result of that request. But, on March 2, 2018, while Moore was visiting with another inmate, a member of the Latin Kings drew a knife and told him that Hauoc said to get their money and that they were placing a KOS[2] on him and it was his last chance. Moore went to Mr. Wilson, but Wilson told Moore that, "if it followed you here it follow you everywhere." (ECF 1 at 5.) Immediately after this exchange, a member of the Latin Kings handed Moore a list. Moore does not say what the list was, but it can be reasonably inferred that it was a list of commissary goods to be purchased

---

[2] Moore does not define KOS, but this appears to be an acronym for "kill on sight." https://acronyms.thefreedictionary.com/KOS (last visited April 5, 2018).

5

by Moore for the benefit of the Latin Kings. Moore showed Wilson the list. In response, Wilson just shrugged. (ECF 1 at 5.) Thankfully, Moore has not been attacked again. These allegations are troubling, as is the inaction of Mr. Wilson, but no harm has come to Moore as a result of that inaction. Fear of an attack that does not occur does not state a claim for monetary damages. *See Doe v. Welborn*, 110 F.3d 520, 523–24 (7th Cir. 1997)("An allegation that prison officials exposed a prisoner to a risk of violence at the hands of other inmates does not implicate the Eighth Amendment's Cruel and Unusual Punishments Clause."(internal quotation marks and citation omitted)).

However, Moore has stated a claim for injunctive relief against Warden Ron Neal for failure to protect Moore from members of the Latin Kings. It is the warden in his official capacity who is charged with ensuring Moore's safety. The injunctive relief Moore is seeking is transfer to another facility, but that is not an appropriate remedy. Moore is entitled to adequate protection as required by the Constitution, but there are multiple methods of providing this protection, and Moore cannot dictate how it is provided. "The PLRA circumscribes the scope of the court's authority to enter an injunction in the corrections context. Where prison conditions are found to violate federal rights, remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right." *Westefer v. Neal*, 682 F.3d 679 (7th Cir. 2012) (quotation marks, brackets, and citations omitted). Therefore, injunctive relief – if granted – would be limited to requiring Warden Neal to provide Moore with adequate protection as required by the Constitution.

Moore has named two additional defendants without describing how they were personally involved in the events he is suing about: Commissioner Robert E. Carter and Executive Assistant Joshua Wallen. There is no general *respondeat superior* liability under 42 U.S.C. § 1983, and these individuals cannot be held liable simply because they oversee operations at the prison or supervises other correctional officers. *See Burks v. Raemisch,* 555 F.3d 592, 594 (7th Cir. 2009). Therefore, Moore has not plausibly stated a claim against Robert E. Carter or Joshua Wallen.

Moore also complains that he did not get adequate medical care following these attacks, even when he requested care. In medical cases, the Eighth Amendment test is expressed in terms of whether the defendant was deliberately indifferent to the plaintiff's serious medical need. *Estelle v. Gamble*, 429 U.S. 97 (1976). A medical need is "serious" if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Moore does not describe the nature of his injuries or what medical care he required. Furthermore, Moore does not indicate what efforts he made to obtain medical care. He does not say who he spoke with, what request forms he filled out, who he gave them to, or what responses he got back. These allegations are too vague to state a claim.

Lastly, while Moore has stated claims against Bane and Horn in their individual capacities for monetary damages, his official capacity claims against these individuals must be dismissed. "[A] suit against a[n] . . . official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan*

*Dep't of State Police*, 491 U.S. 58, 71 (1989). *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) permits lawsuits against municipalities based on a policy, practice, or custom. Here, there are no allegations that Bane and Horn were policymakers or were carrying out any policy. Thus, Moore cannot proceed against Bane or Horn in their official capacities.

For these reasons, the court:

(1) GRANTS Kevin D. Moore leave to proceed against Pam Banes in her individual capacity for compensatory and punitive damages on his claim that she was deliberately indifferent to Moore's safety when she failed to provide adequate protection between December 2, 2017, and his transfer to E-dorm on December 6, 2018, resulting in being attacked with urine by fellow inmates in violation of the Eighth Amendment;

(2) GRANTS Kevin D. Moore leave to proceed against Pam Banes and Tommie Horn in their individual capacities for compensatory and punitive damages on his claim that they were deliberately indifferent to Moore's safety when they permitted Hauoc to move to E-dorm in December of 2017, resulting in a further assault between Houoc's transfer and Moore's move following the January 10, 2018, incident, in violation of the Eighth Amendment;

(3) GRANTS Kevin D. Moore leave to proceed against Warden Neal in his official capacity on an injunctive relief claim to provide adequate protection from members of the Latin Kings, as required by the Eighth Amendment;

(4) DISMISSES all other claims pursuant to 28 U.S.C. § 1915A;

(5) DISMISSES Howard Wilson, Robert E. Carter, and Joshua Wallen pursuant to 28 U.S.C. § 1915A;

(6) DIRECTS the clerk and the United States Marshals Service to issue and serve process on Pam Banes, Tommie Horn, and Warden Ron Neal at the Indiana Department of Correction with a copy of this order and the complaint (ECF 1) as required by 28 U.S.C. § 1915(d);

(7) ORDERS Warden Ron Neal to file an affidavit or declaration with the court by **May 2, 2018**, explaining how Kevin Moore is being housed in order to comply with the Eighth Amendment's requirements; and

(8) ORDERS, pursuant to 42 U.S.C. §1997e(g)(2), that Pam Banes, Tommie Horn, and Warden Ron Neal respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on April 11, 2018.

/s/ JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT